May it please the court, counsel for the government, my name is Amos Tindall and I represent the appellate, Justice McDonald. The problem in this case is that the sentencing court miscalculated the guidelines but it combined the conduct of several distinct unrelated events for sentencing. That analysis resulted in finding acts as relevant conduct that were not part of the same course of conduct or common scheme or plan to the offenses of conviction. After that happens, the sentencing court applies upward adjustments from one event to the other unrelated to the events of conviction. Finally, two adjustments are founded on factual findings based on insufficient evidence. These findings resulted in a sentencing range eight levels higher than the appropriate range for this case. Mr. Tindall, it seems that the two of you disagree over the standard of review. What's your view about what standard of review we should use? Governor, the district court's application of specific offense characteristics is a mixed question of law and fact and we believe that the courts will review it. Now the sentencing court's analysis focused substantially on the elements of the offense of illegal possession of a firearm by a convicted felon while overlooking the lack of any common purposes for the possession of the firearms. Multiple non-contemporaneous illegal firearm possessions must be connected by strong evidence of similarity to be considered part of the same course of conduct. That requires something more than the fact that the offenses involve the illegal possession of firearms. Now offenses are part of the same course of conduct if sufficiently connected or related to each other to warrant the conclusion that they are part of a single episode, or ongoing series of offenses. Are felon and possession cases inherently similar or do we need to look to circumstances of the offense such as where it took place and so forth? Based on the Duggars case, I would say certainly the court must look beyond the elements of the offense. If the elements of the offense were all that matter, then that's what the guidelines would say. But that's not what the guidelines say. Well in terms of, I assume you're talking about the regular conduct. I mean you can have drug offenses that happen two or three times a week and you might go to Europe two or three times a year. I mean both those seem to be regular uh conduct to me. I'm sorry you mean with the drug offenses would be if you do it three times that's regular conduct. But the certainly the circumstances under which a person commits a drug offense according to this circuit's precedent matters. And our contention is that the the objectives of the offense and the objectives of the reason for possessing the gun matter in a felon case. That if the elements of the offense were the only thing that the court were to consider, certainly the the the factors set out in the guidelines are the similarity, the regularity, or the time. If the elements are all that matter, really the regularity and the time interval don't matter at all. It would be no use to have those as considerations. I understand the argument, the logic of it, but there seem to be an awful lot of cases out there that say that one count of unlawful possession of a firearm is similar to another count of unlawful possession of a firearm and hold that it's relevant conduct under the guidelines. There's certainly some cases that say that, although most of those cases are distinguishable from this case because of the regularity of the offense or the timing of the offense. There is at least one case where the court just concludes that if it's if the elements overlap then it's relevant conduct. However, that's not the precedent of this circuit. This circuit is is the Duggar case is substantially similar to this case is analogous because it's a drug offense where the court determined that the objectives of the actual offense matter. And in that case, there was actually the conduct was more similar than the conduct in this case. In this case, there's three very distinct events. There's a shooting event, there's a drug offense, and then there's just simply a firearm case where Mr. McDonald was sleeping in a car. There was a gun locked in the glove box and the police came up. They did a search of the car. There was no other contraband. There was no other illegal activity. There was no violence or aggression. Simply, the possession of the drug was the only thing that was similar to the other events. To consider only that the elements of the offense would ignore this court's precedent, which requires similarity between the offenses, not merely an overlap of the elements. In Duggar, we had an overlap of the elements. Distributing drugs, it's distributing drugs, it's distributing drugs. Possessing a firearm is the same as possessing a firearm. Does it does it does it matter that the district court, and I know you disagree with respect to the final finding as to the type of handgun, but that each of the instances you were dealing with a high-capacity magazine firearm, is that sufficiently similar to warrant a finding of relevant conduct here? Your architecture is that alone is not enough similarity. Certainly, that is something that distinguishes a shotgun from a handgun, and that's fair enough. What the court goes on to say is, but that's really the only similarity the court can draw. The other surrounding factors of the events are not similar at all. The court does mention that he makes his findings that there were three guns, there were handguns, and I think he used the term extended magazines. In his mind, that was unusual, but that's really the only distinguishing factor that he finds between the offense conduct or the three different events. So in this case, if instead of the first two events involving drugs, firearm, and vehicle, if he had been shooting in those two as it was in the third one, would that be sufficient? Yeah, I certainly think that would be more similar. Whether it be sufficient or not, I think might depend on the circumstances. The shooting offense is very distinct from the other two offenses. The exhibits are part of the record, they're part of the appendix in this case, and it's clear from that video that Mr. McDonald is standing beside a car and ducks before he stands to shoot back at whoever was shooting at him. There's nothing about that video that shows the circumstances under which the people fired at him, who fired at him, whether it was a man or a woman, whether the person fired from a gun, whether the person pretty deep in the weeds. I'm sorry? That gets pretty deep in the weeds on trying to figure out relevant conduct. Well, I don't think that factor is so much related to relevant conduct except to that it's clearly not connected to a drug offense and it's not connected to sleeping in a car somewhere. We're talking about a common scheme of plan, a spree is the definition. Let me ask you about a specific case that would help draw the distinctions. I assume you're familiar with the Fifth Circuit case of Brummett? Yes, sir. I know the government cited that. So, that's three separate firearm possessions over a period of nine months, which is identical to what we have here. So, why is Brummett different or why would it be wrong? Well, Brummett is different. We've got four firearms over three separate occasions. Each of those firearms were found in the Brummett residence or a hotel where he was staying. Each of those offenses involved an ongoing drug investigation. Here, we don't have that. This is distinguishable because there's no ongoing drug investigation of Mr. McDonald. There's no conspiracy alleged. So, each of these events is distinct from the other. Brummett is a Fifth Circuit case. It's distinguishable from the way the court analyzed a similar situation in this circuit where the distinguishing factors in the Duggar case, this court looked to the objective of the offense as well as the general nature of the offense to conclude that selling drugs in the prison was not relevant conduct because the offenses had different customers, different accomplices, different methods, and different purposes. The same is true for the different events in this particular case. One involved a girlfriend and a gun was locked in the glove box and the police had to pry it open. Neither Mr. McDonald nor his girlfriend had the key or at least they didn't find the key and they searched the car. One involved someone shooting toward Mr. McDonald. One involved drugs. All were in different locations. In considering the objection to Joinder in this case, the trial court struggled to imagine how counts four and five would be admissible in trial of counts one and three. Now, it's not directly analysis to the standard for relevant conduct in this case, but the court pointed out that if evidence of the counts could be admissible under rule 404B, then the counts could be combined without prejudice. But the court severed the cases anyway because it could see no way that those counts could be relevant under 404B. A similar problem exists in the sentencing court's conclusions under the facts of this case. Supporting counts four or five, excuse me, if mere illegal possession of a firearm is by definition same course of conduct or part of a common scheme or plan, there'd be little if any logic in considering regularity or time. Possessing a gun at any time would be relevant to possessing a gun at any other time. Clearly that's not what the guidelines contemplate. The bare minimum for relevant conduct is one other offense. In this case, there were two. It's hardly strong evidence of regularity. The shorter period of time would favor a course of conduct. Here we have a nine-month period. That is not the longest ever considered, but it's certainly not a short period of time. Mr. Tindall, can I go back to the question that Judge Floyd asked you earlier in the argument about the standard of review? Because I think it does in this case, or maybe it doesn't from your point of view. The government urges that the standard of review should be for clear error. Obviously, that's different, much more deferential to the district court than at the NOBO standard with respect to relevant conduct. You've already told us that you disagree with that, but let's assume that we think you're wrong and that the finding is reviewed for clear error. Is it clearly wrong for the district court to have made a finding that these were sufficiently similar events? I think it's clearly wrong to find that under these circumstances, these were sufficiently similar events. The factual circumstances that distinguish the cases are, you know, the court analyzed, concluded that the presence of a gun with extended magazines were the similarities, as the court has pointed out earlier. There's not a lot more that the district court pointed to in concluding that one gun in particular was relevant conduct as to the other gun. So even under the clear error standard, I think that the district court clearly erred in making that factual finding that it's relevant conduct. Speaking of the review of the videotape, we would conclude that the court clearly erred in finding that the gun had a particular capacity, held a certain number, or was capable of holding a certain number of rounds. In addition, in finding that the conduct... Does that make a difference to any of the enhancements? It does make a difference. It's a difficult analysis, but it does make a difference to the enhancements because only if the court doesn't find relevant conduct. So that would be the case. The three guns finding, it would not make a difference. It wouldn't make a difference. Factual finding is to the assault with the deadly weapons with intent to kill. That finding, likewise, the court made that finding without analyzing the elements. And we would contend that it's clear error to make that finding based solely on what's viewed in the videotape. Thank you, Mr. Tinto. You've got some time left on rebuttal, and we'll now hear from Ms. Niemeyer. Good afternoon, and may it please the court. I'm Julie Niemeyer for the United States. With the court's permission, I'd like to start off by returning to the question posed by the standard of review in this case. The government contends that the standard of review is clear error, as clearly set forth by the previous authorities in this circuit, going back to the Hodge case from 2004, the Pauli case 2002, all the way back to the Mullins case in the 90s, and more recently, the Pineda case and the McVeigh case established that when determining whether the court below erred in the application of the relevant conduct guideline, clear error is the proper standard. And that simply means that when the reviewing court looks back to all of the evidence, can they find that, are they left with a definite and firm conviction that a mistake has been committed? And in this case, using that review, that standard of review, when looking at a situation with a defendant who is a felon, previously convicted, a felon in possession of a firearm, on probation for the felon in possession of a firearm offense, goes on to illegally possess three additional firearms, each equipped with an extended magazine, and doing so in public, there is simply no way to look at that determination and find that that was a clear error. I assume that you disagreed with me on the standard of review. Does that affect your ideas to how this case should go for you? It does not, your honor. Even hypothetically, if this court were to conduct a de novo review, I believe it would reach the same conclusion. Going to the ultimate factors here that the court must examine, the similarity, the regularity, and the temporal proximity of the incidents, even if you were to evaluate each of those considerations de novo, I believe the court would reach the same conclusion. Mr. McDonald possessed illegal firearms under similar circumstances three times over a nine-month period. Well, other than possessing the firearms, what were the similar circumstances? Well, your honor, they were all out in public. Mr. McDonald armed himself with a loaded firearm in public, and each of those three firearms was equipped with an extended magazine. So the government would submit those are very key similarities in these three possessions. Is that it? I believe those are the strongest similarities, your honor, but also the defendant was on probation throughout each of those three possessions, and I think that's an important consideration as well. Yeah, you know, I guess the problem is, by definition, anytime you've got a felon in possession, that by itself obviously can't be enough. I guess the other thing that's helpful here to you is that it's not too far apart in time. That's right, your honor. And under the authorities of this court, we have three very important precedents where a longer span of time was upheld as sufficient related in time. The Pauly case from 2002 involved incidents occurring over 11 months, longer than the situation here. The Hodge case from 2004 involved two incidents occurring three years apart. And in the McVeigh case from 2014, there were two incidents that were two years apart. And moreover, were actually different offenses, a distribution of child pornography offense and a possession of child pornography offense. Well, your opponent cited Duggar to us. Of course, you would agree those were about drug cases. Should we apply that same logic to a felon in possession case? In this case, no, your honor, because there are simply not sufficient factual distinctions that are important in this analysis. In this case, the crimes were identical. They were committed under similar circumstances, being in public, being firearms with an extended magazine, a firearm possession committed while on probation. So each of those offenses was extremely similar to the other two. So does it take all of that? I mean, we get a lot of felon in possession cases and repeats of felon in possession. There's some other circuit cases that seem to say that simply the possession by a felon of a firearm within a comparably short period of time is sufficient to show relevant conduct. Is it that simple or do we have to have something else? Well, your honor, every case has to be examined on the facts, of course. In some hypothetical situation, of course, there are differences and similarities that could be envisioned. But, for example, in some of the cases, there are firearms possessed in one's home versus firearms possessed in public. But even in some of those cases, the courts, for example, the Tenth Circuit in the Garcia case found that still was sufficiently similar. So when you're talking about a person who simply is prohibited from possessing firearms and then goes on to possess them, there are various circumstances that can all be considered relevant. It is all a series of incidents of the same nature that add up to a relevant course of I believe is also instructive the Santoro case from the Seventh Circuit. In that case, there were three guns possessed over a six to nine month period, but actually only on two different occasions. And then again, in the Garcia case, as I previously mentioned, there were three guns in that case on two occasions as well. Two guns possessed in a Send us a case maybe from the Sixth Circuit that rejected the Santoro line where there were two guns possessed on two separate occasions. Yes, Your Honor. I believe you're referring to the Amerson case from the Sixth Circuit. I don't believe that case is persuasive here, first off, because the Sixth Circuit has applied a de novo standard of review. And that's simply not the law in this circuit. We have always applied a clear error standard of review. Furthermore, I believe the Amerson case is not persuasive because they placed an overemphasis on the individual factual circumstances of each possession. One of the possessions was in connection with the shooting and one was not. The court seemed to believe that... Do you see that the Sixth Circuit case is just an outlier in these dominant possession relevant conduct cases? Yes, Your Honor. I would agree with that characterization. I was going to ask. I wasn't proposing one way or the other. Yes, Your Honor. Can I go back to the standard? And you may be right. I guess we need to take a look at this. But why would it be the case that you would test for clear error of the factual findings with respect to the similarities or dissimilarities of the particular offenses? As you pointed out, they occurred in public, they involved high-capacity magazines, and they were relatively short in time. Those are factual findings that you would obviously test for clear error. But then why wouldn't you test the question of whether or not those factual findings are question of law? Your Honor, the interpretation of what the relevant conduct standard means or when to apply it would be a question of law. But the specific application of the relevant conduct standard to the facts is a matter of clear error. And I believe that was clearly set forth by this court's holding in Pineda. And that was where they were examining the guns and drugs and they reviewed those two incidents and the determination that they were relevant to one another under the clear error standard. So the clear error standard is appropriate when we are applying the standard to the facts. And the de novo standard would be appropriate if we were deciding which provision applied or whether a particular guideline was relevant. The fact that the relevant conduct standard is applied to specific facts has always been reviewed in this court under the clear error standard. So the determination in this case of nine months, three incidences in nine months, you're saying to determine whether that's sufficient under the relevant conduct guideline, that that's a factual determination made under a clear error review? It's not a question of law as to whether that's sufficient? It's a determination, Your Honor, that involves a factual finding. And yes, that would be a clear error issue. Simply the fact that you are applying the relevant conduct standard to the facts does not make it a pure question of law. And that's what this court's precedents have shown us. There's also the case of Hawkins from 2015 in this court, which actually addressed the issue of joinder. But under those circumstances, the court found that simply two 922G offenses were sufficiently similar offenses to qualify for joinder in contrast to what happened in the Hawkins case where they were considering joinder of a 922G offense and a carjacking offense. So, Your Honor, assuming the district court correctly applied that relevant conduct determination, what that means for this court is this. Each of the three guns could be considered by the district court when applying the relevant enhancements. And so here, three enhancements were applied. Of course, the three or more firearm enhancement, the high-capacity base offense level, and the high-capacity magazine enhancement. I'm sorry, I already mentioned that. The in connection with another felony enhancement. So each of those three enhancements, if the relevant conduct determination is correct... Large magazine enhancement, you only need one gun, right? Your Honor, there are two guns that support the... Right, you only need one. Oh, yes, Your Honor. I misunderstood. Yes, only one is required, Your Honor. And there's evidence in the record that two of the guns were equipped with high-capacity magazines. Those two guns were introduced into evidence at sentencing. The gun from the February 24th incident and the gun from the October 14th incident were both equipped with high-capacity magazines, 16 or more rounds. And then finally, the in connection with another felony enhancement is supported by two different incidents that were considered by the district court. The drug conviction on count one, and then also the assault with a deadly weapon with intent to kill, evidenced by the possession of ammunition in count five. In sum, Your Honor, because of the relevant conduct determination by the lower court, each of those three guns established the enhancements applied. That determination cannot be disturbed except unclear error. And there is simply insufficient evidence here to reverse that decision on the clear error standard. If the court has no further questions. All right, thank you very much. Mr. Tindall, you've got some rebuttal time. Just a couple of points. I also mentioned that all three guns were carried in public. It is true that the guns were discovered not in Mr. McDonald's home. One was in a car. He was not carrying the gun. One was discovered. It was acquitted conduct that was found near the drug offense. And one clearly from the video showed that he was shooting. Those are distinguishing factors. They may all be in public, but it's certainly different than someone each time being stopped carrying a gun concealed or on his person. I want to address the part about the enhancements because certainly everything hinges on the relevant conduct with the enhancements. Certainly, as the court mentioned, you only need one if it's relevant conduct. But it is critical that if these are not relevant conduct to each other, certainly the gun from the shooting cannot be used as an enhancement for the drug offense. It does change that analysis if the court finds that this is not relevant conduct. Again, and back to the point that the court asked counsel about the Amerson case, we would contend that the Amerson case is actually much more analogous to the Duggars case. Again, it's drugs versus guns. But the critical inquiry there is its elements versus elements. In the drug case, there were still the same elements. It might have been different drugs and it might have been different locations. But in Duggars, that was the critical inquiry. The objective was different. And in this particular case, while the elements may be the same, the objective was different in each of the three events. And it's true that your client was acquitted in one of those cases that was considered by the district court can take those facts and apply the proponents of the evidence standard and in determining whether that conduct is relevant. Certainly. And we're not contending otherwise. As we point out in the brief, we recognize that that is the law. We put that in for preservation. All right. We do think the Amerson case is an important analysis. We think it's more consistent with the findings of this, the precedent of this court. We believe that under the facts of this case, the court's analysis, the factual findings that based on the video, the court should find that the government failed to establish that the three separate events were relevant conduct. Without being relevant conduct, the firearm conviction for count five cannot be part of the base offense level for count one. The two point enhancement for possessing three guns should be subtracted because finding possession of three guns requires a finding that the possession of each is relevant conduct. And finally, the four point enhancement for committing a felony while illegally possessing the firearm must be subtracted. Thank you. Thank you very much, Mr. Tindall. It is our tradition or practice at this point to come down and greet counsel, but that's a COVID prohibition at this point. So I do want to recognize Mr. Tindall that your court appointed and the court expresses its appreciation to you for being willing to undertake that function. And we thank both counsel for their arguments today. And the court will now adjourn court for the day. We'll retire. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: G. Steven Agee, Albert Diaz, Henry F. Floyd